IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2019

## TENNESSEE CREDIT UNION v. WANDA POWELL ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-1158-III      Ellen H. Lyle, Chancellor**

———————————————————

## No. M2018-01384-COA-R3-CV

———————————————————

This is an appeal of an employer's Petition for Judicial Review, which challenged a ruling by the Tennessee Department of Labor and Workforce Development that the employer's former employee was entitled to unemployment benefits. The employer contended the employee was ineligible for benefits because she was terminated for "misconduct," as defined in the Tennessee Employment Security Act, for violating a policy known to the employee by using the employer's property for a non-business-related purpose. The Department found that the employee's frequent use of the employer's internal instant message system to "chat" with co-workers was an error in judgment or discretion but did not rise to the level of "misconduct," which Tenn. Code Ann. § 50-7-303(b)(3) defines as excluding "good faith errors in judgment or discretion." The chancery court affirmed the agency's decision. The employer appeals, contending the "good faith exception" never applies when an employee is discharged for violating an employer's policy or rule. The Department counters, insisting the good faith exception applies regardless of the employer's reason for termination. Construing the statute according to the natural, ordinary meaning of the language chosen by the legislature, we have determined that an employee's violation of an employer's policy that is due to good faith errors in judgment or discretion does not constitute "misconduct" as that term is defined in Tenn. Code Ann. § 50-7-303. Accordingly, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and KENNY W. ARMSTRONG, JJ., joined.

Charles Stephen Michels, II, and L. Gino Marchetti, Jr., Nashville, Tennessee, for the appellant, Tennessee Credit Union.

Jeffrey O. Powell, Hendersonville, Tennessee, for the appellee, Wanda Powell.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Labor & Workforce Development, and Wanda Powell.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

Wanda Powell ("Ms. Powell") worked for the Tennessee Credit Union ("Employer") as a member services representative for five years until Employer terminated her employment on December 12, 2016, along with the employment of three other employees, for excessive, non-business-related use of Employer's recently installed instant message system.

The instant message system was installed in July or August 2016 and was to be used by employees to communicate with each other regarding business matters. Employer had a long-standing Information System policy ("the Policy") that "employees should use any information system for business purposes only."

In December 2016, an assistant branch manager noticed that Ms. Powell was using the instant message system frequently. The manager retrieved and provided Ms. Powell's messaging logs to Employer's human resources generalist, who provided the logs to Employer's Chief Executive Officer. After reviewing up to six of the approximately 35 pages of messages, the CEO decided to terminate Ms. Powell and the other three employees for excessively using the instant message system for non-business purposes.

On January 8, 2017, Ms. Powell filed an application for unemployment benefits with the Tennessee Department of Labor and Workforce Development ("the Department"). On May 4, 2017, the Department issued a Disqualifying Separation Determination, finding that Ms. Powell did not qualify for unemployment benefits under Tenn. Code Ann. § 50-7-303. The Department explained that Ms. Powell's actions constituted work-related "misconduct" under § 303 because she was discharged for violating Employer's rule against improper internet usage.

On May 19, 2017, Ms. Powell filed an appeal with the Department's Appeals Tribunal. Ms. Powell contended that Employer's stated reason for her discharge was false and pretext for retaliatory animus. In response, Employer filed, *inter alia*, a copy of the Policy, a transcript of the instant message conversations, and a copy of a previous reprimand Ms. Powell received for violating the Policy in October 2015 by using a

company computer to browse the internet. The 2015 reprimand required a review of the Policy "with special attention to the Procedure and Restrictions section," which outlined "the proper usage of the [i]nternet"[1] and warned, "Any further violation will lead to termination." The Policy provided that "employees should use any information system for business purposes only." The Policy's Procedures and Restrictions section stated that it was "strictly forbidden to receive, send, publish, transmit, disseminate, republish, retransmit, store or redisseminate sexually-oriented messages, information or images of any kind." In her testimony before the Appeals Tribunal, Ms. Powell conceded that she knew about the Policy but explained that she understood it applied to personal use of the internet, not the instant message system.

The transcript of the instant message conversations was comprised of 35 pages of messages that Ms. Powell and three of her co-workers sent to each other in a "group chat." The conversations occurred on fifteen days during the period of September to December 2016. In total, the four employees sent approximately 1,200 messages to each other, of which Ms. Powell sent approximately 600. Most of the messages concerned office gossip, complaints about Employer, personal matters, and lunch plans. None of them pertained to or included "sexually-oriented messages, information or images of any kind." Although Employer's human resources generalist characterized Ms. Powell's use of the instant message system as "excessive," she acknowledged that the content of the messages was not inappropriate. Similarly, Employer's CEO testified that Ms. Powell was terminated because of the frequency and volume of messages sent.

On August 9, 2017, the Appeals Tribunal Hearing Officer entered an order concluding that Employer failed to prove it terminated Ms. Powell for a material breach of duty. The Hearing Officer found that Ms. Powell was terminated "simply for the volume of messages" she sent, and there was insufficient evidence to conclude the messages caused Ms. Powell to neglect her obligations. Accordingly, the Hearing Officer found Ms. Powell was entitled to receive unemployment benefits.

On August 22, 2017, Employer filed an appeal of the Hearing Officer's decision to the Tennessee Office of Administrative Review but did not request an additional evidentiary hearing. In its decision of September 19, 2017, the Commissioner's Designee found Ms. Powell was entitled to unemployment benefits because Employer had presented insufficient evidence to show Ms. Powell's use of the instant message system rose to the level of work-connected "misconduct" under Tenn. Code Ann. § 50-7-

---

[1] The 2015 reprimand pertained to Ms. Powell's use of Employer's computers to view an internet article entitled "Sex Talk: 6 Erogenous Zones in Men."

303(a)(2)(A). The Designee reasoned that the definition of "misconduct" in § 303(b)(3) does not include "a good faith error in judgment or discretion."

On October 25, 2017, Employer filed a Petition for Judicial Review in the Davidson County Chancery Court. Employer maintained that the Department's decision was not supported by the weight of the facts, which showed that it terminated Ms. Powell for misconduct because she knowingly violated company policy. On November 27, 2017, the Department filed an answer to the Petition, generally denying that Employer was entitled to relief.[2] In its brief to the court, the Department argued there was no evidence Ms. Powell knew she was violating the Policy or neglected her duties while doing so.

On June 29, 2018, the trial court affirmed the decision of the Commissioner's Designee, finding, *inter alia*, that Ms. Powell's conduct fell within the good faith exception to "work-related misconduct" under Tenn. Code Ann. § 50-7-303(b)(3)(D)(3). This appeal followed.

Employer presents two issues for review, and the Department presents one.[3] Having considered their issues, we have determined the dispositive issue is whether termination of employment for violation of an employer's rule or policy, when the employee's violation was a good faith error in judgment or discretion, disqualifies the employee for unemployment benefits under Tenn. Code Ann. § 50-7-303(a)(2)(A).

## STANDARD OF REVIEW

In an appeal from an agency decision concerning unemployment compensation, trial and appellate courts apply the same standard of review. *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991); *Armstrong v. Neel*, 725 S.W.2d 953, 955 n.1 (Tenn. Ct. App. 1986). That standard is set forth in Tenn. Code Ann. § 50-7-304(i)(2):

> The [court] may affirm the decision of the commissioner or the [court] may reverse, remand or modify the decision if the rights of the petitioner have

---

[2] Ms. Powell did not participate in the judicial-review proceedings.

[3] Employer's issues read: "Whether the Trial Court erred when it ruled that Appellee's conduct did not constitute misconduct pursuant to Tenn. Code Ann. § 50-7-303(b)(3)(A)(vi)" and "Whether the Trial Court erred when it ruled that conduct that violates Tenn. Code Ann. § 50-7-303(b)(3)(A)(vi) and constitutes misconduct is nevertheless not misconduct if the act also falls into Tenn. Code Ann. § 50-7-303(b)(3)(D)." The Department's issue reads: "Whether substantial and material evidence in the record supports the Commissioner's Designee's determination that Ms. Powell was not discharged for misconduct connected to her work."

been prejudiced because the administrative findings, inferences, conclusions or decisions are:

> (A) In violation of constitutional or statutory provisions;
>
> (B) In excess of the statutory authority of the agency;
>
> (C) Made upon unlawful procedure;
>
> (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (E) Unsupported by evidence that is both substantial and material in the light of the entire record.

The court may not reweigh the evidence and may reverse, remand, or modify the decision only "for errors that affect the merits of the final decision of the commissioner's designee." *Id.* § 304(i)(3).

The court need not find the decision was the only reasonable one or that it was the decision that the court would have reached had the issue been presented to it for the first time in the judicial proceedings. *Cawthron v. Scott*, 400 S.W.2d 240, 242 (Tenn. 1966). To the contrary, the function of the reviewing court is limited. *Id.* All that is needed to support the decision is a finding that it was warranted by the record and had a reasonable basis in the law. *Id.* "Where the facts are essentially undisputed, the question of whether the employee's actions constitute 'misconduct' under the statute is a question of law that we review *de novo*." *Sparkman v. Phillips*, No. M2013-01235-COA-R3-CV, 2014 WL 3058443, at *5 (Tenn. Ct. App. July 7, 2014).

## ANALYSIS

Relying on the definition of "misconduct" in Tenn. Code Ann. § 50-7-303(b)(3)(A)(vi) [hereinafter "subdivision (A)(vi)"], Employer contends that Ms. Powell was disqualified for unemployment benefits because she was aware of the Policy, which prohibited the use of Employer's computers for personal purposes, and she frequently used her computer for personal purposes by chatting with her co-workers. Employer also asserts that, as a matter of law, the good faith exception in § 303(b)(3)(D)(3) [hereinafter "subdivision (D)(3)"] does not apply if an employee's conduct falls under the definition in subdivision (A)(vi). Conversely, the Department insists, regardless of whether an employee's violation of an employer's policy is misconduct under the definition in subdivision (A)(vi), it is statutorily excluded from the definition of misconduct, as subdivision (D)(3) clearly states, if the violation was due to good faith errors in judgment or discretion.

- 5 -

Under Tenn. Code Ann. § 50-7-303, claimants are disqualified for unemployment benefits if the Department "finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work." *Id*. § 303(a)(2)(A). Section 303(b)(3)(A) defines "misconduct" as including, but not limited to, a "violation of an employer's rule." Section 303(b)(3)(D), however, defines "misconduct" as excluding "[g]ood faith errors in judgment or discretion."

Courts must "interpret a statutory section reasonably in light of the context of the entire statute, construing it according to the natural, ordinary meaning of the language chosen by the legislature and in a 'manner which avoids statutory conflict and provides for harmonious operation of the laws.'" *In re Conservatorship of Wade*, 484 S.W.3d 151, 156 (Tenn. Ct. App. 2015) (quoting *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013)).

Having reviewed the two subsections at issue pursuant to the above standard, it is readily apparent that an employee's violation of a known policy constitutes "misconduct" unless the violation is the result of "[g]ood faith errors in judgment or discretion." Stated another way, and as phrased by the Commissioner's Designee in his conclusions of law, "work connected misconduct is not a good faith error in judgment or discretion." This is evident from the natural, ordinary meaning of the language chosen by the legislature that "'[m]isconduct' does not include . . . [g]ood faith errors in judgment or discretion." Tenn. Code Ann. § 50-7-303(b)(3)(D). Moreover, our determination is supported by *Pavement Restorations Inc. v. Ralls*, No. W2016-01179-COA-R3-CV, 2017 WL 657775 (Tenn. Ct. App. Feb. 17, 2017), which is the only other Tennessee decision to interpret the relationship between the definitions in § 303(b)(3)(A) and the exclusions in § 303(b)(3)(D).

In *Pavement Restorations Inc.*, the employer advocated for an interpretation of § 303 that required the court to "define misconduct pursuant to subdivision (A) to the complete exclusion of the language provided in subdivision (D)." *Id*. at *6. We rejected that interpretation, finding that the statute "provides both a provision defining misconduct as, *inter alia*, a violation of an employer's rules and an exemption from the definition of misconduct when the complained-of misconduct resulted from, *inter alia*, '[i]nadvertence or ordinary negligence in isolated [instances].'" *Id*. (quoting Tenn. Code Ann. § 50-7-303(b)(3)(D)(2)). We reasoned that § 303(b)(3)(D) was "the more narrow provision" and, therefore, "the general provision providing for the definition of misconduct must give way to the more specific provision providing for the exemptions."[4] *Id*. at *7.

---

[4] As we explained in *Pavement Restorations Inc.*, § 303(b)(3)(A) provides a non-exhaustive list of what misconduct may include, whereas § 303(b)(3)(D) "provides for a very narrow and limited list of

(continued . . .)

Our conclusion is also consistent with that in *Armstrong v. Neel*, wherein we adopted the following definition of misconduct:

[C]onduct evincing such wil[l]ful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand[,] mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, **or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.**

725 S.W.2d at 956 (emphasis added) (quoting *Boynton Cab Co. v. Neubeck*, 296 N.W. 636, 640 (Wis. 1941)).

Therefore, as we explained in *Pavement Restorations Inc.*, two determinations must be made before disqualifying an applicant for unemployment benefits on the statutory ground of "misconduct" under Tenn. Code Ann. § 50-7-303(a)(2): the first is that the employee's conduct constitutes misconduct under § 303(b)(3)(A), and the second is that the employee's conduct is not excluded under § 303(b)(3)(D). *See* 2017 WL 657775, at *8. Accordingly, and contrary to Employer's contentions, if an employee's violation of a known policy of an employer is due to good faith errors in judgment or discretion, then the employee's violation of company policy does not constitute "misconduct" as that term is defined in Tenn. Code Ann. § 50-7-303.

It is undisputed that Ms. Powell was aware of the Policy and that she violated the Policy by using the instant message system for personal purposes. Thus, her conduct constituted misconduct under subdivision (A)(vi). Nevertheless, there is substantial and material evidence in the record to support the Commissioner's Designee's determination that Ms. Powell's violation of the Policy was due to good faith errors in judgment or discretion. Because Ms. Powell's violation of the Policy was due to good faith errors in judgment or discretion—which subdivision (D)(3) expressly excludes from the definition

---

what actions are specifically exempt from the definition of misconduct, allowing three—and only three—exemptions from the rule." 2017 WL 657775, at *7. Thus, read in context, § 303(b)(3)(D) is more specific and takes precedence over § 303(b)(3)(A).

of misconduct—her violation of the Policy does not provide grounds for termination based on misconduct, as that term is defined under Tenn. Code Ann. § 50-7-303.

Therefore, we affirm the determination that Ms. Powell was entitled to unemployment benefits.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Tennessee Credit Union.

_____
FRANK G. CLEMENT JR., P.J., M.S.